UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LEE P.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

Defendant.

CASE NO. 3:20-CV-5339-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

## I.   INTRODUCTION

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the Commissioner of Social Security's ("Commissioner") denial of Plaintiff's application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 2.

After considering the record, the Court concludes the Administrative Law Judge ("ALJ") erred in evaluating Plaintiff's testimony and lay testimony from Plaintiff's mother.  The ALJ did not harmfully err in rejecting the opinions of treating psychologist Richard Rinehart,

1    M.D.  The Court declines to address whether the ALJ erred in refusing to allow Plaintiff to cross-

2    examine non-examining doctors, as that issue can be dealt with on remand based on any new

3    evidence presented.  Accordingly, this matter is reversed and remanded pursuant to sentence four

4    of 42 U.S.C. § 405(g) to the Commissioner for further proceedings consistent with this Order.

5                    II.      FACTUAL AND PROCEDURAL HISTORY

6            Plaintiff applied for disability insurance benefits in August 2018, alleging disability as of

7    June 30, 2017, later amended to July 31, 2018.  *See* Dkt. 14, Admin. Record ("AR"), 17, 91–92,

8    132, 231–32.  The application was denied on initial administrative review, and on

9    reconsideration.  *See* AR 130–60.  A hearing was held before ALJ Malcolm Ross on August 28,

10   2019.  *See* AR 86–129.  In a decision dated November 29, 2019, ALJ Ross determined Plaintiff

11   to be not disabled. *See* AR 17–28. The Appeals Council denied review. *See* AR 1–4.

12                    III.      STANDARD OF REVIEW

13           Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

14   social security benefits if the ALJ's findings are based on legal error or not supported by

15   substantial evidence in the record as a whole. *Ford v. Saul,* 950 F.3d 1141, 1153–54 (9th Cir.

16   2020) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

17                    IV.      DISCUSSION

18   **A.      Whether the ALJ Reasonably Rejected Plaintiff's Testimony**

19           Plaintiff contends the ALJ failed to give clear and convincing reasons for discounting

20   Plaintiff's subjective symptom testimony.[1]  *See* Dkt. 16, Pl. Op. Br., pp. 12–16.  Plaintiff

21   _____

22           [1] Defendant argues in a footnote that Plaintiff failed to challenge the ALJ's evaluation of
23   his physical impairments.  *See* Dkt. 17, Def. Resp. Br., p. 2 n.2.  This is inaccurate, as Plaintiff
     challenged the ALJ's determination that Plaintiff received only conservative treatment for his
24   physical impairments, and that Plaintiff's daily activities are inconsistent with his physical

testified he suffered from posttraumatic stress disorder ("PTSD") due to his work in the military. AR 99.  He testified his PTSD made it difficult to get along with coworkers, follow simple directions, respond appropriately to supervisors, or concentrate.  *See* AR 97–98, 112–13, 300–01, 339, 344.  Plaintiff testified the pressure of quotas when he worked as a military recruiter put substantial stress on him.  AR 99.

Plaintiff testified he has radiating pain down his arms.  AR 97.  He testified it was painful to sit due to neck pain.  AR 106–07, 114–15, 295, 300.  He testified he can sit for about an hour, and would then need 30 minutes of stretching before he could sit back down.  AR 111.  He reported pain in his shoulder and low back prevent him standing for long periods of time.  AR 339.  He testified he cannot walk for more than two blocks.  *Id.*

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014).  At this stage, the claimant need only show the impairment could reasonably have caused some degree of the symptoms; he does not have to show the impairment could reasonably be expected to cause the severity of the symptoms alleged.  *Id.*  The ALJ found Plaintiff met this first step.  *See* AR 23.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for

symptom testimony.  *See* Dkt. 16, pp. 13–16.  The Court thus considers the ALJ's evaluation of Plaintiff's testimony regarding the severity of his mental and physical symptoms.

1   doing so. This is not an easy requirement to meet.'"  *Trevizo*, 871 F.3d at 678 (quoting *Garrison*,

2   759 F.3d at 1014-15).  In evaluating the ALJ's determination at this step, the Court may not

3   substitute its judgment for that of the ALJ.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

4   As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some

5   of the ALJ's reasons for discrediting a claimant's testimony fail.  *See Tonapetyan v. Halter*, 242

6   F.3d 1144, 1148 (9th Cir. 2001).

7           The ALJ rejected Plaintiff's testimony regarding the severity of his impairments.  *See* AR

8   23–25.  The ALJ reasoned Plaintiff's neck and shoulder pain were inconsistent with the level of

9   treatment he received and normal exam findings.  AR 23.  The ALJ reasoned Plaintiff's mental

10  health symptoms were inconsistent with the majority of mental status exam findings, and

11  evidence Plaintiff's symptoms were controlled with medication.  AR 24.  The ALJ reasoned

12  Plaintiff's testimony was inconsistent with his functioning as shown by his daily activities.  AR

13  24–25.  The ALJ reasoned Plaintiff's testimony was undermined by inconsistencies in his reports

14  regarding possible causes of his PTSD.  AR 24.

15          1.      The ALJ Erred in Rejecting Plaintiff's Neck and Shoulder Pain Testimony as
                    Inconsistent with His Level of Treatment and Providers' Exam Findings
16

17          The ALJ erred in rejecting Plaintiff's testimony regarding the severity of his neck and

18  shoulder symptoms based on his level of treatment and allegedly mild symptoms.  The treatment

19  Plaintiff received included multiple steroid injections, physical therapy, and electric stimulation.

20  *See* AR 1869, 1889, 2877–84, 2890, 2906, 2920, 2933.  Plaintiff at one point opted for more

21  conservative treatment over surgery.  *See* AR 2848.  But the treatment he received could not

22  actually be called conservative such that it undermined Plaintiff's testimony as to the severity of

23  his neck and shoulder pain.  *See Garrison*, 759 F.3d at 1015 n.20 ("[W]e doubt that epidural

24  steroid shots to the neck and lower back qualify as 'conservative' medical treatment."); *Kager v.*

*Astrue*, 256 F. App'x 919, 923 (9th Cir. 2007) (finding error where the ALJ discounted the plaintiff's testimony based on a lack of significant pain therapy, when the plaintiff had been prescribed opioid medications).

The ALJ similarly erred in rejecting Plaintiff's neck and shoulder pain testimony based on normal exam findings. An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But the ALJ must explain how the medical evidence contradicts the claimant's testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The evidence to which the ALJ pointed does not contradict Plaintiff's complaints regarding the severity of his pain, as imaging showed cervical spine abnormalities, and Plaintiff continued to report neck pain. *See, e.g.*, AR 2815–17, 3162, 3190. That Plaintiff showed normal range of motion, strength, and sensation at several examinations does not refute his claims that he has pain in his neck and shoulders.

       2.    <u>The ALJ Erred in Rejecting Plaintiff's Mental Health Symptom Testimony as Inconsistent with Mental Status Exam Findings in the Record and Based on the Determination that Plaintiff's Symptoms were Controlled with Medication</u>

The ALJ erred in rejecting Plaintiff's testimony regarding the severity of his mental health symptoms as inconsistent with the majority of mental status exam findings in the record. The ALJ noted Plaintiff had PHQ-9 scores that ranged from indicating mild to severe symptoms. AR 24. The ALJ also noted Plaintiff had restricted mood and affect on some exams, but other findings were generally within normal limits. *Id.* Many of these normal findings the ALJ cited were very basic, such as statements that Plaintiff had "appropriate demeanor, [and] normal speech," and made during exams focused on treating Plaintiff's neck pain. AR 2898, 2903–04, 2912, 2918, 2927, 2931, 2942, 2947. These findings do not clearly or convincingly contradict

1  Plaintiff's testimony that he had difficulty getting along with coworkers, following simple

2  directions, responding appropriately to supervisors, and concentrating.

3        The ALJ also erred in rejecting Plaintiff's mental symptom testimony based on a finding

4  that his symptoms were controlled with medication.  "Impairments that can be controlled

5  effectively with medication are not disabling for the purpose of determining eligibility for [social

6  security disability] benefits."  *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d

7  1001, 1006 (9th Cir. 2006).  But "'[t]here can be a great distance between a patient who responds

8  to treatment and one who is able to enter the workforce . . . .'"  *Garrison*, 759 F.3d at 1017 n.23

9  (quoting *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011)).  "Reports of improvement in the

10  context of mental health must be interpreted with an understanding of the patient's overall well-

11  being and the nature of [his] symptoms" as well as "an awareness that improved functioning

12  while being treated and while limiting environmental stressors does not always mean that a

13  claimant can function effectively in a workplace."  *Garrison*, 759 F.3d at 1017 (internal

14  quotation marks and citations omitted).

15        The evidence to which the ALJ cited does not establish Plaintiff's symptoms were

16  controlled to the point that he could reenter the workforce.  For example, the ALJ cited to a

17  record from June 2018 indicating Plaintiff had improved mood and anxiety.  *See* AR 2664.  Two

18  months later, however, the same provider noted Plaintiff "continues to struggle with anxiety,

19  [and] irritability [sic]."  AR 2659.  Another record to which the ALJ cited indicated Plaintiff was

20  better able to deal with his ex-partner, but continued to have significant anxiety and difficulty

21  being around strangers and crowds.  *See* AR 2979.  Finally, it appears at least some of Plaintiff's

22  improvement was due to the fact that he had stopped working, as one doctor noted Plaintiff's

23  anxiety was "[i]mproved since not working."  AR 2987.

24

1

2

3.     The ALJ Erred in Rejecting Plaintiff's Testimony as Inconsistent with His Daily Activities

3

The ALJ erred in rejecting Plaintiff's testimony as inconsistent with his functioning as

4

demonstrated by his daily activities.  An ALJ may reject a plaintiff's symptom testimony based

5

on his daily activities if they contradict his testimony or "meet the threshold for transferable

6

work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603).

7

However, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery

8

shopping, driving a car, or limited walking for exercise, does not in any way detract from [his]

9

credibility as to [his] overall disability.  One does not need to be 'utterly incapacitated' in order

10

to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d

11

at 603).  The ALJ reasoned Plaintiff could walk, drive a car, go shopping, spend time with

12

family, go to church, handle his personal care, care for his cat, prepare meals, and handle his own

13

finances.  AR 24.  The ALJ provided no analysis to show how these activities contradict

14

Plaintiff's statements or show transferable work skills.

15

4.     The ALJ Erred in Rejecting Plaintiff's Testimony Based on Inconsistent Statements Regarding PTSD

16

Finally, the ALJ erred in rejecting Plaintiff's testimony based on allegedly inconsistent

17

statements regarding the cause of Plaintiff's PTSD.  Plaintiff testified he had been a military

18

recruiter tasked with recruiting medical professionals.  AR  94–95.  He testified his PTSD was

19

due to "being put in combat situations, being put in stressful situations that basically just, as a

20

recruiter, they tear you down." *Id.*  He further testified to substantial pressure due to recruitment

21

quotas.  AR 99–100.  The ALJ took issue with Plaintiff's claims of being in "combat," and noted

22

times in which Plaintiff denied having PTSD.  AR 24.

23

24

1       The ALJ erred in rejecting Plaintiff's testimony based on inconsistencies regarding his

2 involvement in combat.  When asked if he had been in combat, Plaintiff replied, "Yes, I was.  I

3 was in Kuwait and also Qatar. . . .  And then also I was in El Salvador too."  AR 100.  This is

4 consistent with the record.  *See* AR 612, 645, 650, 2874, 2993.  The ALJ found this testimony

5 inconsistent, pointing to treatment notes the ALJ believed showed Plaintiff "denied combat

6 deployments."  AR 24.  But Plaintiff did not deny combat deployments, he denied participating

7 in combat activity when asked in the context of a hearing loss exam.  *See* AR 1068.  Any

8 inconsistency here was due to ambiguous terminology, and such inconsistency is not a clear and

9 convincing reason to reject Plaintiff's testimony.

10       Similarly, the ALJ erred in rejecting Plaintiff's testimony based on his allegedly

11 inconsistent reports of PTSD.  The ALJ noted two instances in which Plaintiff denied PTSD,

12 both of which occurred before the onset date, and at appointments intended to treat conditions

13 unrelated to Plaintiff's mental health.  *See* AR 24, 485–88, 552–54.  Neither statement is a

14 convincing reason to reject Plaintiff's overall testimony.

15       In sum, the ALJ failed to provide any clear and convincing reasons for rejecting

16 Plaintiff's testimony regarding the severity of his neck and shoulder pain or his mental health

17 symptoms.  The ALJ therefore harmfully erred.

18 **B.**       **Whether the ALJ Reasonably Rejected Plaintiff's Mother's Testimony**

19       Plaintiff contends the ALJ failed to give germane reasons for discounting Plaintiff's

20 mother's testimony.  *See* Dkt. 16, pp. 10–12.  Plaintiff's mother, who was mistakenly identified

21 as his son, submitted two written statements.  *See* AR 26, 311–18, 331–38.  Her statements

22 mirrored Plaintiff's testimony.  *See* AR 97–115, 295–300, 311–18, 331–38.  She reported

23 Plaintiff had extreme anxiety during stressful situations.  AR 311.  She testified Plaintiff had

24

1  difficulty sitting and standing due to leg, back, neck, and shoulder pain.  AR 311, 316.  She

2  testified Plaintiff was "[e]motionally unable to answer questions and to deal with people in

3  general."  AR 331.  Plaintiff's mother testified Plaintiff could "only lift 30–50 lbs.," and stand,

4  bend, squat, or kneel for 20–30 minutes at a time.  AR 336.

5       In determining disability, "'an ALJ must consider lay witness testimony concerning a

6  claimant's ability to work.'"  *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout*

7  *v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)).  The ALJ must "give reasons

8  germane to each witness" before he can reject such lay witness evidence.  *Molina v. Astrue*, 674

9  F.3d 1104, 1111 (9th Cir. 2012) (internal citations and quotation marks omitted).  "Further, the

10  reasons 'germane to each witness' must be specific."  *Bruce*, 557 F.3d at 1115 (quoting *Stout*,

11  454 F.3d at 1054).

12       The ALJ rejected Plaintiff's mother's testimony because he found the opinions of the

13  non-examining doctors more persuasive.  AR 26.  The Commissioner concedes this was error,

14  but asserts it was harmless because Plaintiff's mother's testimony mirrored Plaintiff's, so the

15  reasons given to reject Plaintiff's testimony apply with equal force to Plaintiff's mother's

16  testimony.  Dkt. 17, p. 7.  As discussed above, however, the ALJ erred in rejecting Plaintiff's

17  testimony.  *See supra* Part IV.A.  The ALJ's reasons for rejecting Plaintiff's testimony therefore

18  cannot apply to Plaintiff's mother's testimony.  Consequently, the ALJ harmfully erred in

19  rejecting Plaintiff's mother's testimony.

20  **C.**     **Whether the ALJ Reasonably Rejected Dr. Rinehart's Opinions**

21       Plaintiff contends the ALJ erred in rejecting Dr. Rinehart's opinions.  *See* Dkt. 16, pp. 2–

22  10.  Dr. Rinehart was one of Plaintiff's treating psychiatrists.  *See* AR 2657–66, 2759–69, 2973–

23  81, 3186–88, 3212–13.  Dr. Rinehart submitted a medical source statement opining Plaintiff had

24

1   a trauma or stress-related disorder.  AR 3151.  Dr. Rinehart opined Plaintiff had marked

2   limitations in all areas involving understanding, remembering, or applying information, and

3   concentrating, persisting, and maintaining pace.  AR 3153–54.  Dr. Rinehart opined Plaintiff had

4   marked to extreme limitations in all areas involving interacting with others.  *Id.*  Dr. Rinehart

5   opined Plaintiff had marked, moderate, and no or mild limitations in adapting or managing

6   himself.  AR 3154.

7          The ALJ rejected Dr. Rinehart's opinions.  AR 26.  The ALJ reasoned (1) Dr. Rinehart's

8   opinions were inconsistent with or unsupported by his own exam notes, which indicated

9   significant improvement with medication, and mental status exams within normal limits; (2) Dr.

10  Rinehart's opinions were inconsistent with or unsupported by the overall medical record, which

11  also showed normal findings on mental exam; (3) Dr. Rinehart relied on a diagnosis of PTSD,

12  but Plaintiff made inconsistent statements about combat exposure; (4) Dr. Rinehart's opinions

13  were largely uniform, "indicat[ing] a lack of thoughtful completion" of the form on which he

14  stated his opinions; and (5) Dr. Rinehart's opinions were inconsistent with Plaintiff's level of

15  functioning as demonstrated by his activities of daily living.  *Id.*

16         The Commissioner argues new regulations promulgated in 2017 change the standard by

17  which the ALJ's reasons for rejecting medical providers' opinions are measured.  *See* Dkt. 17,

18  pp. 7–10.  Under current Ninth Circuit precedent, an ALJ must provide "clear and convincing"

19  reasons to reject an uncontradicted opinion from a treating or examining doctor, and "specific

20  and legitimate" reasons to reject a contradicted opinion from such doctor.  *Lester v. Chater*, 81

21  F.3d 821, 830–31 (9th Cir. 1995).  Dr. Rinehart's opinions were contradicted by the opinions of

22  Eugene Kester, M.D., and Patricia Kraft, Ph.D., so the question is whether the specific and

23  legitimate standard still applies.  *See* AR 140–41, 157–58.

24

ORDER REVERSING AND REMANDING
DEFENDANT'S DECISION TO DENY BENEFITS - 10

1    The genesis of the "specific and legitimate" standard for contradicted opinions was the

2    Ninth Circuit's decision in *Murray v. Heckler*, 722 F.2d 499 (9th Cir. 1983). In *Murray*, the ALJ

3    rejected the opinions of a treating doctor in favor of the opinions of an examining doctor. *See id.*

4    at 501. The Ninth Circuit reviewed precedent from other circuits and determined an ALJ must

5    ordinarily give more weight to the opinions of a treating doctor because that doctor is

6    "'employed to cure'" the claimant and has a "'greater opportunity to observe and know the

7    patient as an individual.'" *Id.* at 502 (quoting *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir.

8    1983)). Thus, "[i]f the ALJ wishes to disregard the opinion of the treating physician, he or she

9    must make findings setting forth specific, legitimate reasons for doing so that are based on

10   substantial evidence in the record." *Murray*, 799 F.2d at 502.

11       In 1991, the Commissioner promulgated regulations setting forth standards for reviewing

12   medical opinions. 56 Fed. Reg. 36932-01, 1991 WL 142361 (Aug. 1, 1991). Those regulations

13   established a hierarchy mirroring the one set out by the Ninth Circuit, in which treating sources

14   are given more weight than non-treating sources, and examining sources are given more weight

15   than non-examining sources. *See id.* at *36935–36; 20 C.F.R. §§ 404.1527(c), 416.927(c). The

16   Ninth Circuit mentioned these regulations in its 1995 opinion in *Lester*, and continued to rely on

17   the "clear and convincing" and "specific and legitimate" standards. *See Lester*, 81 F.3d at 830–

18   31.

19       In 2017, the Commissioner revised its regulations to eliminate the hierarchy of medical

20   opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg.

21   5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, for claims filed on or

22   after March 27, 2017, the Commissioner "will not defer or give any specific evidentiary

23   weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources."

24

20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. §§ 404.152c(c), 416.920c(c).  The most important factors are supportability and consistency.  20 C.F.R. §§ 404.152c(a), (b)(2), 416.920c(a), (b)(2).

At this time, the Ninth Circuit has not issued a decision stating whether it will continue to require an ALJ to provide "clear and convincing" or "specific and legitimate reasons," or some variation of those standards, when analyzing medical opinions.  Regardless, it is not clear the Court's consideration of the adequacy of an ALJ's reasoning under the new regulations differs from the current Ninth Circuit standards in any significant respect.  Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions."  20 C.F.R. §§ 404.1520c(a), (b)(1), 416.920c(a), (b)(1).  The new regulations appear to, at the least, require an ALJ to specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion.  Furthermore, the Court must continue to consider whether the ALJ's decision is supported by substantial evidence.  *See* 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision. . . .  [T]hese courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be [a] highly deferential standard to us").

1    Therefore, based on the above considerations, the Court will determine whether the

2    ALJ's decision is free of legal error and supported by substantial evidence.

3    Turning to the ALJ's analysis, the ALJ did not harmfully err in rejecting Dr. Rinehart's

4    opinions.  An ALJ may discount a doctor's opinions when they are inconsistent with or

5    unsupported by the doctor's own clinical findings.  *See Tommasetti v. Astrue*, 533 F.3d 1035,

6    1041 (9th Cir. 2008).  Dr. Rinehart's records reveal normal mental status exam findings, other

7    than several episodes of restricted mood and affect.  *See* AR 2660, 2668, 2760, 2973, 2975–76,

8    2979, 3186–87, 3212–13.  Plaintiff reported he continued to struggle with anxiety, and the record

9    does not support the ALJ's finding that Plaintiff's symptoms were controlled with medication.

10   *See* AR 2659, 2979.  But the ALJ reasonably noted Plaintiff's mental status exams were

11   routinely within normal limits, depriving Dr. Rinehart's opinions of marked to extreme

12   limitations of evidentiary support.

13   The remainder of the ALJ's reasons for rejecting Dr. Rinehart's opinions were erroneous,

14   but those errors were harmless.  An error is harmless "where it is 'inconsequential to the ultimate

15   disability determination.'"  *Molina*, 674 F.3d at 1115 (quoting *Carmickle*, 533 F.3d at 1162).  Dr.

16   Rinehart's records did not support his opinions even if the ALJ erroneously determined those

17   opinions demonstrated a lack of thoughtfulness, for example.  The ALJ therefore did not

18   harmfully err in rejecting Dr. Rinehart's opinions.

19   **D.    Whether the ALJ Reasonably Refused to Provide Plaintiff an Opportunity to Cross-Examine the Non-Examining Doctors**

20

21   Plaintiff contends the ALJ violated his due process rights by failing to provide him an

22   opportunity to cross-examine non-examining doctors on whose opinions the ALJ relied.  *See*

23   Dkt. 16, pp. 16–17.  "A claimant in a disability hearing is not entitled to unlimited cross-

24   examination, but is entitled to such cross-examination as may be required for a full and true

1   disclosure of the facts." *Copeland v. Bowen*, 861 F.2d 536, 539 (9th Cir. 1988) (citing *Solis v.*

2   *Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983)).  Because this matter is being remanded for

3   further administrative proceedings, the Court need not decide whether cross-examination is

4   required here.  The parties may submit additional evidence, and the ALJ should then determine

5   whether cross-examination is necessary for a "full and true disclosure of the facts."  *See id.*

6   **E.      Scope of Remand**

7          Plaintiff asks the Court to remand this matter for an award of benefits.  Dkt. 16, p. 18.

8   Plaintiff argues he meets Listings 12.04 and 12.15 based on Dr. Rinehart's opinions.  *Id.*

9   Plaintiff also argues his testimony that he needs to nap for two hours a day, coupled with

10  testimony from the vocational expert, establishes he cannot work.  *Id.*

11         Remand for an award of benefits "is a rare and prophylactic exception to the well-

12  established ordinary remand rule."  *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017).  The

13  Ninth Circuit has established a three-step framework for deciding whether a case may be

14  remanded for an award of benefits.  *Id.* at 1045.  First, the Court must determine whether the ALJ

15  has failed to provide legally sufficient reasons for rejecting evidence.  *Id.* (citing *Garrison*, 759

16  F.3d at 1020).  Second, the Court must determine "whether the record has been fully developed,

17  whether there are outstanding issues that must be resolved before a determination of disability

18  can be made, and whether further administrative proceedings would be useful."  *Treichler v.*

19  *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and

20  quotation marks omitted).  If the first two steps are satisfied, the Court must determine whether,

21  "if the improperly discredited evidence were credited as true, the ALJ would be required to find

22  the claimant disabled on remand."  *Garrison*, 759 F.3d at 1020.  "Even if [the Court] reach[es]

23  the third step and credits [the improperly rejected evidence] as true, it is within the court's

24

1    discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*,

2    880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

3         Plaintiff has failed to show this case warrants remand for an immediate award of benefits.

4    First, the ALJ reasonably rejected Dr. Rinehart's opinions, so disability cannot be found on that

5    basis. *See supra* Part IV.C.  Second, Plaintiff's testimony that he needs to nap for two hours a

6    day is contradicted by the opinions of Dr. Kester and Dr. Kraft, who opined Plaintiff could

7    "complete a normal workday/week within normal tolerances of a competitive workplace." *See*

8    AR 141, 158.  The ALJ, not the Court, must resolve this evidentiary conflict. *See Andrews v.*

9    *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

10        On remand, the ALJ shall reevaluate Plaintiff's and his mother's testimony.  The ALJ

11   shall reassess Plaintiff's RFC, as well as steps four and five of the disability evaluation.  The

12   ALJ shall conduct all further proceedings necessary to reevaluate the disability determination in

13   light of this opinion.

14                            V.    CONCLUSION

15        Based on the foregoing reasons, the Court finds that the ALJ improperly concluded

16   Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and

17   this matter is remanded for further administrative proceedings in accordance with the findings

18   contained herein.

19        Dated this 16th day of November, 2020.

20

21   _____

22   David W. Christel
     United States Magistrate Judge

23

24